IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EARLIEN SLATER** and | : | |
| **GEORGE SLATER,** | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **GENUARDI'S FAMILY** | : | |
| **MARKETS, et al.** | : | No. 13-794 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                 September 24, 2014

Earlien Slater slipped and fell while shopping at Genuardi's in August of 2010. The exact cause of her fall remains unknown, though there is evidence that she slipped on some liquid near an ice machine in the store. She sued Genuardi's and Safeway for negligence as a result of the incident. Her husband sued for loss of consortium. Presently before the Court is Defendants' motion for summary judgment. Defendants argue that Slater has failed to raise a genuine issue of material fact as to whether Defendants had actual or constructive notice of the dangerous condition that caused Earlien Slater's injury. The Court agrees, and therefore, for the reasons that follow, grants Defendants' motion and dismisses the case against them.

**I.      BACKGROUND**

On August 8, 2010, Earlien Slater was shopping at a Genuardi's supermarket in Conshohocken, Pennsylvania. (Defs.' Mot. for Summ. J. ¶ 1.) She had been in the store for approximately one hour and had a full cart when she slipped and fell near the ice machine. (*Id*.; Defs.' Mot. for Summ. J. Ex. D [Slater Dep.] at 19.) According to Slater, she went from the cash

registers to the courtesy counter because the cashier forgot to use her discount card. (Slater Dep. at 24.) Slater did not see anyone at the ice machine while she was checking out or while she was at the courtesy counter because she was not paying attention to the ice machine. (*Id*. at 24-25.) According to her customer service receipt, she finished her transaction at 3:36 in the afternoon. (Mem. of Law in Supp. of Pls.' Answer to Defs.' Mot. for Summ. J. at 2.) After leaving the courtesy counter, Slater had to walk by the ice machine to leave the store. (Slater Dep. at 26.) She did not notice any ice on the floor as she was exiting the store, nor did she notice any ice cubes on the ground. (*Id*. at 28, 32.)

After falling, she was holding the handles of the cart, but she did not see or feel any water, ice, or other liquid on the floor. (*Id*. at 40-41.) A man who helped Slater up after she fell told her that she had slipped on water. (*Id*. at 32.) Slater then informed store employees that "there was water on the floor." (*Id*. at 41.) She testified that she "probably saw a little bit of [water] . . . [but] [i]t's been so long, [she didn't] remember completely. (*Id*. at 32.) Slater also testified that "they went and they got towels and cleaned up water. They got paper towels and cleaned up water." (*Id*. at 41.)

Following Slater's fall, a customer's report was completed. The report stated that the time of the accident was 3:40 p.m. and that "Filling Ice @ 3:30" caused her fall. (Defs.' Mot. for Summ. J. Ex. F [Customer Report].) In response to the question, "Do you know how it got there or how long it was there?," the report stated "5 minutes." (*Id*.)

II. **STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant

2

does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.   DISCUSSION**

To establish a negligence claim under Pennsylvania law, a plaintiff must prove: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 548 (E.D. Pa. 2008) (citing *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005)).

In Pennsylvania, the "nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff's injury." *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997). It is undisputed that at the time of incident,

Slater was an "invitee" of Defendants. *See* Restatement (Second) of Torts § 332 (defining an "invitee" to include "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land"). Accordingly, Defendants owed Slater a duty to protect her from foreseeable harm. *See Craig*, 555 F. Supp. 2d at 549. However, that duty arises only when the possessor of land "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee." Restatement (Second) of Torts § 343. An invitee must prove either that the possessor of land played a role in creating the harmful condition, or that the possessor of land had either actual or constructive notice of the harmful condition. *Estate of Swift*, 690 A.2d at 722; *see also Craig*, 555 F. Supp. 2d at 549.

    A.    **The Cause of Earlien Slater's Injuries**

As an initial matter, the Court rejects Defendants' argument that they are entitled to summary judgment because the cause of Plaintiff's injuries is speculative. Defendants contend that Slater did not see any water or ice cubes on the floor in front of the ice machine on the day in question. She also testified that she did not feel any water, ice, or other liquid. However, Plaintiff was told by the man who helped her off the ground that she slipped on water. Defendants argue that this is hearsay and should not be considered by the Court. Even without rendering an evidentiary ruling at this stage, however, there is a genuine issue of material fact about the cause of Slater's fall for a number of reasons. First, although Slater's testimony is not clear on the presence of liquid on the floor prior to her fall, she testified that "[a]ll I know is they went and they got towels and cleaned up water. They got paper towels and cleaned up water." (Slater Dep. at 41.) At a minimum, there is circumstantial evidence from which a fact finder could conclude that she slipped on something wet

on the floor. Second, the possibility that Slater did not see what she slipped on prior to falling does not mean that determining the cause of her fall is speculation and conjecture. Rather, it is unsurprising that Slater did not see any ice cubes or liquids on the ground prior to her fall. Most people look ahead when they walk and do not constantly focus on the ground. Unless warned of a danger below, most individuals are not hyper-vigilant regarding dangers that should not be there. In fact, Slater testified that she was "looking ahead when [she] was pushing the cart and then [she] was down." (*Id*. at 40.) Moreover, one would think that if she saw liquid on the ground, she would have avoided it. Finally, the testimony is not clear as to the cause of Slater's fall. Defendants have an argument that she may not have slipped on ice or liquid. But Slater has evidence that she did. Juries find facts, not judges.

      **B.**      **Notice of the Dangerous Condition**

The cause of Slater's injuries is not a basis to dismiss her claim. However, Slater has another problem. She has no evidence that Defendants had knowledge—either actual or constructive—of the dangerous condition. As an initial matter, Plaintiffs argues that Defendants created the condition that caused her injury and therefore, notice is not required. Slater has no evidence, direct or circumstantial, to support this theory. Slater does not know what she slipped on, and there is no evidence that Defendants were aware of what caused her fall. Plaintiffs note that an injury report prepared at the store contains the comment that the accident was caused by "Filling Ice @ 3:30." (Customer Report). But this is pure conjecture, not disputed material fact. The manger who wrote this report did not recall the incident and testified that the form on which she wrote that information is not the summary of an investigation, but rather is a form summarizing information from the customer. (Pls.' Resp. to Defs.' Mot. for Summ. J. Ex. D [Babyak Dep.] at 47.) The record is devoid

of evidence that Defendants created the condition. Therefore, Slater must demonstrate actual or constructive notice of the condition to defeat Defendants' summary judgment motion.

There is no evidence of actual notice here. Indeed, a report of sweeps of the store fails to note any ice or water on the ground prior to the incident. (Defs.' Mot. for Summ. J. Ex. G [Sweep Log Report].) Thus, this case hinges on the issue of constructive notice. What constitutes constructive notice of a dangerous condition depends on the circumstances of each case. Courts examine the time elapsing between the origin of the defect and the accident, the size and physical condition of the premises, and the opportunity which defendant, as a reasonably prudent person, had to remedy it. *See Parker v. McCrory Stores Corp.*, 101 A.2d 377, 378 (Pa. 1954). Courts also look at the number of persons using the premises, the frequency of such use of the premises, the nature of the defect, its location on the premises, and its probable cause. *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011). "One of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." *Id*. (citation omitted). If a dangerous condition only existed for a very short period of time before causing any injury, then the possessor of the land, even "by the exercise of reasonable care," would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard. *Id*. (citing Restatement (Second) of Torts § 343).

Slater has put forward no evidence as to how the liquid got on the floor or how long it was on the floor. Slater did not see the liquid prior to falling, nobody working in the store testified as to what caused the accident or how long the condition existed, and the customer who told Slater that she slipped on water said nothing about the cause of the dangerous condition or how long it had existed. Without such evidence, Slater cannot show that Defendants had constructive knowledge of

6

any harmful condition. *See Estate of Swift*, 690 A.2d at 722-23 ("Appellants present no evidence as to how the water arrived on the floor. Nor is there evidence as to how long the condition existed. Without such proof, Appellants cannot establish a breach of the legal duty owed to Decedent by Appellee which is a condition precedent to a finding of negligence. Consequently, the trial court properly granted Appellee's motion for summary judgment."). Given the location of the spill, the frequency of the use of the premises, and Defendants' ability to detect the dangerous condition, water on the floor should be recognized rather quickly. The Court concludes that summary judgment is still warranted. There is simply no way for this Court or a jury to know whether the dangerous condition appeared five minutes before Slater's fall or an hour before her fall, yet went unnoticed by the employee conducting the sweep. Because the jury cannot guess or speculate as to the length of time that the hazardous condition existed, the Court must decide the issue as a matter of law. *See Felix*, 827 F. Supp. 2d at 443.

     Plaintiff has presented no evidence from which a reasonable jury could infer Defendants had constructive notice of the dangerous condition here. Plaintiff did not notice water, ice, or liquid on the floor prior to her slip and fall, and there is no evidence that any customer or employee knew when the dangerous condition first existed. The incident occurred near an ice machine near the exit of the store, so it is not surprising that the area might be wet. Therefore, one would expect Defendants to have notice of a hazardous condition in a relatively short period of time. Nevertheless, the only evidence here is that a sweep of the area performed shortly before the fall revealed no dangerous conditions. (Sweep Log Report.)

## IV.     CONCLUSION

It is unfortunate that a trip to the supermarket resulted in injuries for Earlien Slater. Those injuries, however, do not entitle her to recover against Defendants unless she can raise a genuine issue of material fact regarding Defendants' notice of the condition that led to her fall. She has not done so, and the Court therefore grants Defendants' motion. The Court also dismisses George Slater's loss of consortium claim. *See Craig*, 555 F. Supp. 2d at 555 ("If the underlying negligence claim brought by the claimant's spouse is dismissed, however, the loss of consortium claim must also be dismissed."). An Order consistent with this Memorandum will be docketed separately.